Good morning, Your Honors. May it please the Court, I am Robert Tolan, appearing for Safety-Kleen. It appears that this morning is attorney fee morning, and I wish I understood the last case better. I was trying, but... I'm sure you listened with interest, and you're aware that you've got two circuit judges and one district judge. And so the perspective here, not that you need to persuade me, of course, but the perspective from this point of view is that if a judge gives sufficient rationale so that the circuit court understands what in the world they were doing, why should we be sending it back for a line-by-line analysis? That's my perspective. So I'm sure you'll address that in the court. I actually don't think the Court should send it back. I think the Court should reverse it with directions to allow no attorneys' fees. And I don't think it is necessary to give a line-by-line analysis, but I do think it is necessary to give an analysis. In our case, the district court found that the vast majority of time on the case concerned the unsuccessful meal rest break claims, not the successful itemized wage statement claims, which the Court said was only minimally litigated before the Court, and that it was impossible to determine what work was performed on the recoverable claims as opposed to the non-recoverable claims. Impossible. And so the district court didn't do it. Plaintiff's submission to the district court intentionally created that situation. The time entries that the plaintiffs presented to the district court stated their work in only the broadest generic terms. The entries never disclosed the claims or issues on which they had worked. Don't you – isn't your major difficulty here a finding by the district judge that it was impossible? This is one of those cases, a subset, where it's impossible to divide out the hourly lines into the separate issues, the successful ones and the unsuccessful ones. And isn't that a finding? Isn't that your major, the most difficult hurdle that you have to cross? I thought that was my major advantage. Yeah?    Because it's so difficult. Why is it so difficult? Because the plaintiffs created a situation where the district court was unable to do what California case law requires a district court to do. That's the plaintiffs' – that was the plaintiffs' burden, and they failed to do it. You know, there are a number of things that the plaintiffs could have done. First of all, they claimed that they eliminated all of the time spent exclusively on the nonrecoverable claims. But they couldn't have done that because their entries were so generic that they couldn't have looked at their own time records and identified the nonrecoverable claims from the recoverable claims. And it seems to me that Judge Hamilton understood that and whacked the refute request down considerably, partly because of that. Well, I want to say that there are several things that the plaintiffs could have done and should have done. First of all, they could have tried to explain to the trial court what methodology they had used to identify the entries for nonrecoverable claims versus nonrecoverable claims. They didn't do it. I made an estimate myself going through the briefs and looking at the number of pages devoted to the recoverable claims and the number of pages devoted to the nonrecoverable claims, and I did the same thing with the depositions. And I estimated that the plaintiffs had spent something under 10 percent of their time on the recoverable claims. But the plaintiffs didn't do that. They didn't tell the court they had done that. They didn't tell the court any way that they could have removed those nonrecoverable claims. Another thing they could have done was they could have taken it out of their entries but put it in another list and presented it to the district court. So the district court could see, well, here's what we took out, here's what we left in, and let the district court evaluate that. Or better yet, they might have simply introduced their original, not their revised, but their original timesheets and highlighted the entries that they thought were not recoverable so the district court could compare. But they gave the district court no means to do that. Let me ask you a question. Do you agree that no double counting occurred here? Double counting. In other words, there's no double counting of time. We're just talking about whether time should be compensated. I'm not sure what Your Honor means by double counting. Well, there's nobody who's put in time two different places getting awards, getting fees for the same time twice. Same person getting? Same person or different persons who submitted the time twice. That's not been argued here, as I understand it. There was a little bit of two people. That's not even been appealed here, is it? It hasn't. That is not part of the case. We don't have any double counting, as I saw it. At least it hasn't been appealed. So at this point, if there's been no double counting, we're really talking about did the court use a reasonable method in trying to come up with what it did? Now, if I look at Hensley, and I read Hensley very carefully, it says, where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised. But where the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the result. Would you agree with that? No, Hensley is not the standard. Well, that's what Hensley suggests. Hensley is not the standard. This case is decided under California law. Well, I understand that, but I'm just trying to make sure the Supreme Court doesn't undo what we do. We're sitting here in the Supreme Court, and it's going to look over the top of us, and that's what I'm trying to do is make the Supreme Court law sufficient to what I'm doing here. Let's go to California law then. When we go to California law, instead of calculating a total number of excessive hours, this comes out of Gorman, the trial court might have applied a negative multiplier. The district court just has to give some rationale, measurable reason to the figure. In this particular matter, there was a lodestar figure presented. It was all of it, and some was in and some wasn't. And the court then, in a lodestar method, applied a negative multiplier because it couldn't determine what to do. And they have discretion in these situations. So why is that not the ability of the district court on an abuse of discretion standard, why is that not reasonable? I'm sorry, Your Honor, I don't agree with the law that Your Honor stated from the cases mentioned. Well, okay, then let's not talk about those cases then. You cannot suggest in this particular matter there wasn't a lodestar. I can't. Well, how? There was lodestar figures presented. The court did not go through the lodestar and miscalculate some this way and some that way, but there was a lodestar presented. There was an hourly fee schedule presented and fees that were attached to that schedule. And then the judge said, I can't tell what's in and what's out, and so I'm going to negatively apply and I'm just going to give them an amount. The California Supreme Court has said that the court must first determine the lodestar based on the court's determination of a reasonable number of hours and a reasonable rate. After the court determines that lodestar, the court may then adjust up or down based on a number of factors. This court did not determine a reasonable number of hours and did not determine reasonable rates and, therefore, did not comply with the California Supreme Court's direction that the lodestar must first be determined based on a determination of a reasonable number of hours and rates. I think we just have a semantical difference here, sir. What the judge is suggesting is the judge does start with the lodestar. When you submit it in your papers, it's part of the declaration. Even though the judge doesn't say, here's the ultimate finding, the formulaic result, and these factors adjusted, if the judge gives analysis, even though the judge doesn't address it line by line, doesn't give you the formulaic result, the judge nevertheless gives you factors why this, why she's discounting this part and not discounting this part, that that's enough of an analysis. I think our semantic difference is you're saying it has to be an analysis of the additional factors line by line. No. And what Judge Smith is asking you is, isn't it enough if they just simply give us an analysis where they have the lodestar in front of them? They don't have to make a finding first, here's the formulaic result and here's the adjustment. As long as they give us an analysis as how they're treating the lodestar, that's enough. Now, here's why I say the judge did not determine a lodestar. Determining a lodestar, according to the California Supreme Court, means making a determination of the reasonable number of hours worked on the recoverable claims and a determination of market rates for those attorneys. You can't start by saying, here's a lodestar. The plaintiffs come in and say, here are hours we worked on recoverable claims, but that's not a valid statement, and here are rates. But the court has to make a determination as to the number of hours, not line by line. It could have been estimated, but the court has to make it. It must, as a matter of law and without discretion, the court must make a determination of the reasonable number of hours and the rates that will go into that lodestar. If you don't mind my interrupting, the time's running, that's why I'm doing it. I don't understand why, in response to the questions you've just been getting, you don't make a response that you made in your papers, both in the district court and here. I don't know how to pronounce Mr. Feitz's name. He says he, this is I, have expended 1,056.60 hours. And then he says that his hourly rate is $420 an hour. And then the supporting documents make it very, very clear that he's not the only person who did the work, that Mr. Edgar and Mr. Grady also did work. And I have no idea what their hourly rates are, and I don't have any idea really how much work any of those three did in proportion to the other. It's just clear from the papers that he submitted that he personally, Mr. Feitz, did not do a total of 1,056 hours. And you made that point in your papers. Well, yes. And thank you. I mean, I think that is correct, that the plaintiffs failed to support the hours worked by the various attorneys who the papers show put time into the case. Okay. We'll wait a little here from the other side, and then you'll have a few minutes to respond. Thank you, Your Honors. Thank you, Justice Kennedy. I'm going to ask Kristin Caverly on behalf of the appellees and the real parties and interests, of course, the attorneys, getting the fee award. The district court certainly could have put a formula with regard to the hours and could have said this many hours at this many rate. But this court did give a very reasoned decision. She did sit through a long class case. She did prevail over the class settlement. She certified the class. She approved the settlement. And she found that the plaintiffs prevailed on three of the four claims. The fourth claim was a substantial litigated claim. And she found, of course, that we hadn't prevailed on that claim and that hours associated with that claim wouldn't be awarded. When we went with regard to the fee applications, the attorneys on the plaintiff's side did their best to reflect only the fees that would be recoverable. So they did their best. Your Honor, there's one entry with regard to my own declaration that the court found related to the meal and break time claim, which was inadvertently left in. But the rest of the claims are very interrelated. All of the discovery, the class certification, and the settlement efforts related to the prevailing claims as much as they related to the wage and hour claims. There were certainly meal and break time, the wage and hour claims, that had special events, particularly with regard to the summary judgment issues. Those motion hours were not included. So to say that the district court couldn't look at Plaintiff's lodestar and say that that's the starting point here, we're not saying it's 100 percent because Plaintiff's counsel are telling me in sworn declarations they haven't presented 100 percent. They've presented already a lesser amount. I've detailed my concerns about the amounts that they've provided in this extensive opinion, and we can tell that the district court herself looked at these entries. In fact, by her pointing out with regard to my declaration the specific date and entry, with regard to the costs, she clearly went through which costs would be allowed and which costs would not be allowed. This is not a district court that has just thrown up her hands and say, I can't make a decision, so I'll give you $100,000. At the record at 16, she specifically says, I've made all of these observations, and it's the court's view that taking all of the foregoing into account, the lodestar amount proffered by Plaintiff's, that's her starting, should be reduced by 50 percent, and then she again gives her rationale for the reduction. Certainly, Plaintiff's counsel weren't happy with the reduction, but there's got to be finality in these attorney's fees decisions, and that's why this is an abuse of discretion. What appellants want you to do is not remand for clarification or to get her calculation of which hours she deducted and which hours she didn't deduct. They want you to reverse and award no fees at all, despite the ample record that the district court found, not only that they were prevailing, that we provided a substantial public benefit by way of injunctive relief and class relief for a large number of people. Instead, because we've only relied on our own declarations as to the rates in the community and our own declarations regarding the time, that we should be awarded absolutely nothing. And that's not at all what the Serrano and the Plaintiff cases provide. Could you respond to the, I guess, objection made in the papers, but not made until I prompted here orally, that I didn't see you respond to in your papers in the district court, nor in your papers here, to the objection to Mr. Feitz's declaration that he, I, I mean, I'll just quote, I spent this time 1,056 hours when just patent that he didn't do that all himself. That's correct. And the attachments to the declaration indicate which attorney did which task. Which flatly contradicts what he says in the covering memorandum. It is. I see nothing in your papers that ever responds to that by saying, well, oh, you know, that is a mistake, and here's what we really should have said. I mean, what's the district court supposed to do with that? Your Honor, I think the district court should do exactly what she did, because the reason she didn't even acknowledge the problem, I'm not sure she saw the problem. I don't know with regard to that specific problem either, because that was not an issue that was raised in the argument below. It was raised in the papers. It was raised in the papers, yes, Your Honor. It wasn't something that anybody focused on at the argument. But what she did, did address her concerns about the hourly rates and the over-inclusiveness of hours. There was never a challenge that the hours were worked. And in the reply here, appellants acknowledged, they're not suggesting any of the hours are falsified. But Mr. Feitz says my hourly rate is $420. I have no idea what the hourly rate of the other two lawyers is. He did not put that in the record. With regard to the other declarations, Mr. Ramos was the only lawyer with himself, and my declaration has in the attached the hourly rates for the attorneys who were working. With regard to Mr. Feitz, yes, his declaration should have been more detailed. But the court would have been more precise. One argument that you can make is that contrary to appellant's argument here, that the judge should have found or found that no evidence concerning the rate was adduced, rather that plaintiff's attorneys' own attestations were the only evidence adduced, which is therefore one reason that the district court calculated the load star to be lower than plaintiff suggested. And that was the only evidence provided. That's typically the only evidence provided, because otherwise, and it seems like appellant's arguing that successful plaintiff's counsel can't testify with regard to their own rates and the validity of those rates. They should go out and get a market study or survey their counterparts and see what rates they chose. The district court knows if you come in with a rate of $1,000 an hour for 1,000 hours of work, that's not reasonable. Maybe it is in some tiny specialty area. It's not reasonable for these type of claims. And she certainly has her own common sense to bring, as well as not even one counsel's declarations, but three separate law firms who were involved here. And, yes, she had concerns about how conclusive that evidence was, and that was one of the reasons she chopped our fees in half, because of that uncertainty. And that goes to Your Honor's point as well with regard to Mr. Fite's declaration. Certainly, we should have done it differently in looking back. But the record – I mean, this is a small point in a way, but I have to say that when it was specifically brought to your attention in the papers objecting to his fee request, that there was absolutely no acknowledgment on your side that there was even a problem, no attempt to correct and to sort out and give hourly rates for the other lawyers. I just don't understand that. Your Honor, in retrospect, that was certainly an error. That should not be repeated. But that does not deprive the district court of discretion to look at the record in front of her and make a reasonable award of attorneys' fees in a case where there's no dispute that there is a statutory right, that there were prevailing parties, and that a substantial public interest was protected here. If Your Honors don't give discretions to the district court to look at the fees, look at the hourly rates, and make these determinations after long litigations in front of their own bench, there's no second-guessing them at this level. There's no way to go back and say, well, if that declaration had have been corrected on reply, if Mr. Fites had made clear that my hourly rate is the same as other attorneys or different, her award would be different, would be conjecture. She had a rational basis for her decision, and she gave a very lengthy explanation as to her decision. Plaintiffs have accepted that, despite disappointment with her fee award. But there should be certainty at the end of the day, and we shouldn't continue to litigate cases between attorneys after the merits have long since been decided. And the merits here were decided in favor of the class and in favor of relief from the defendants, and they should pay the attorneys, because the plaintiffs here did not pay the attorneys. The attorney's right is to get fees from the defendant, and the defendant should pay. Thank you. Unless you have any other questions, I thank you. You've saved a little time. Two things, I think. First, with regard to Mr. Grady and Mr. Edgar, the attorneys in Mr. Fites's fee statement, there's also no information on their backgrounds, no information on how many years they've been practicing, their skills, their experience, nothing. I think also there are one and maybe two unnamed individuals in or unexplained individuals in Ms. Caverly's invoice to Mr. Stegall of paralegals who are not otherwise identified or rates identified for. I think I need to return to and try again to address the point that Judge Jones in particular raises. I guess it's a given in terms at least of that point as expressed that the Court did not determine a lodestar. The Court found that it was impossible to determine a lodestar from the information that the plaintiffs gave the Court. But I want to repeat that the obligation to determine the lodestar first includes the obligation to make a determination of the number of hours reasonably expended on the recoverable claim. I don't really mean to cut you off, but you did say you're repeating, and you are, and you're over time. But if you have something you want to say, I'm summing up. Okay. Ms. Caverly refers to the trial judge having given a lengthy explanation of why she did what she did. The lengthy explanation was why she was not why she cut the plaintiff's submission. It was not an explanation in any way of how she got to the 50 percent that she cut or how she got there. We don't know. Okay. Thank you very much. Case of Perez v. Safety Clean Systems now submitted for decision.
judges: Jones, Fletcher W. , Smith N. R.